```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: OCT 27 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES OF AMERICA                         :
                                                 :
                                                 :
                                                 :        13-cr-58 (KBF)
                     -v-                          :
                                                 :        OPINION & ORDER
                                                 :
                                                 :
LOUIS BORRERO,                                    :
                         Defendant.               :
                                                 :
------------------------------------------------------------------X

KATHERINE B. FORREST, District Judge:

On October 14, 2014, defendant Louis Borrero ("defendant" or "Borrero"),

through his counsel, filed a motion to dismiss the indictment on the ground that the

Government engaged in "outrageous government conduct" during its investigation

of defendant and his robbery crew.  (Letter Memorandum in Support of a Motion to

Dismiss the Indictment for Outrageous Governmental Conduct and Mr. Borrero's

Position on Sentencing at 2-3, ECF No. 478 ("Def.'s Mem.").)  Although the

deadlines to make pre-trial and post-trial motions have long passed,[1] the Court has

carefully considered the issues raised in Borrero's motion.

For the reasons set forth below, Borrero's motion is DENIED.

---

[1] Rule 12(b)(3)(B) of the Rules of Federal Criminal Procedure states that among the motions that
"must be raised before trial" are motions "alleging a defect in the indictment."  Fed. R. Crim. P.
12(b)(3).  The Second Circuit has held that the defense of outrageous government conduct "should
normally be raised prior to trial, so that the trial court can conduct a hearing with respect to any
disputed issues of fact."  United States v. Nunez-Rios, 622 F.2d 1093, 1098 (2d Cir. 1980).  Despite
defendant's failure to raise this defense earlier, however, the Court will consider it on the merits.

## I.   BACKGROUND

On January 23, 2013, a federal grand jury returned Indictment 13 Cr. 58

against seventeen defendants, including Borrero.  (ECF No. 24.)  On September 3,

2013, the Government filed Superseding Indictment S1 13 Cr. 58 (KBF) (the

"Superseding Indictment") against Borrero and two others.  (ECF No. 107.)  The

Superseding Indictment charged Borrero in three counts.  Count One charged him

with a conspiracy to distribute, or possess with the intent to distribute, one

kilogram and more of heroin, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A), and

846.  Count Two charged Borrero with a conspiracy to commit a Hobbs Act robbery,

in violation of 18 U.S.C. § 1951.  Count Three charged that, in connection with the

crimes charged in Counts One and Two, Borrero carried or possessed a firearm, or

aided and abetted the same, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and (2).

The charges in the Superseding Indictment arose from defendant's

participation in a robbery and drug crew (the "Crew"), which, among other things,

impersonated police officers and robbed drug dealers.  Borrero and other members

of the Crew were arrested on January 9, 2013 during a Drug Enforcement

Administration ("DEA") sting operation.  The arrest occurred as Borrero and other

Crew members were attempting to rob what they believed was a heroin stash

house.[2]

---

[2] The Court assumes familiarity with the facts underlying the sting operation.  These facts are set
out in the trial record, the Government's opposition to Borrero's post-trial motion (ECF No. 395), the
Government's opposition to Borrero's motion to dismiss the Superseding Indictment (ECF No. 482),
and the Presentence Investigation Report ("PSR").

Borrero's trial commenced on November 4, 2013. On November 12, 2013, a jury convicted Borrero on all counts. On December 3, 2013, Borrero submitted a pro se motion to set aside the verdict, for entry of judgment of acquittal, and for a new trial, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure. (ECF No. 265.) In that motion, Borrero asserted, first, that that the evidence admitted against him at trial was legally insufficient, and, second, that he received constitutionally ineffective assistance from his trial counsel.

On February 14, 2014, the Court granted counsel's request to extend the deadline to submit post-trial motions until March 31, 2014. (ECF No. 341.) On March 31, 2014, counsel advised the Court that he "d[id] not have any additional or supplement issues to present to the Court," and requested that the Court adjudicate Borrero's previously filed pro se motion. (ECF No. 380.) On May 12, 2014, the Court denied Borrero's motion on the merits. (ECF No. 399.) On June 19, 2014, the Court denied Borrero's motion for reconsideration of the May 12, 2014 decision. (ECF No. 434.)

On October 14, 2014, as part of his sentencing submission, Borrero moved, for the first time, to dismiss the Superseding Indictment for outrageous government conduct. (ECF No. 478.) That motion is the subject of this Opinion & Order.

II.    LEGAL STANDARD

"[C]ourts have long recognized that [sting] operations are permissible, often necessary for effective law enforcement." United States v. Jenkins, 876 F.2d 1085, 1087 (2d Cir. 1989) (per curiam) (citing United States v. Russell, 411 U.S. 423, 432

(1973)); see also Russell, 411 U.S. at 432 (explaining that in drug-related offenses, "the infiltration of drug rings and a limited participation in their unlawful present practices" is "one of the only practicable means of detection"); United States v. Malachowski, 415 F. App'x 307, 310 (2d Cir. 2011) ("[T]he use of an undercover agent, a cooperating witness, and a 'sting' operation . . . is well within the realm of standard investigatory techniques.").

The Second Circuit has, however, recognized the principle that "[g]overnment involvement in a crime may in theory become so excessive that it violates due process and requires the dismissal of charges against a defendant even if the defendant was not entrapped." United States v. Al Kassar, 660 F.3d 108, 121 (2d Cir. 2011) (citations omitted). "Unlike entrapment, which focuses on the defendant's predisposition, outrageous government conduct focuses on the conduct of the government agents." Id. (citation omitted).

The burden of establishing outrageous government conduct rests with the defendant. United States v. Cromitie, 727 F.3d 194, 221 (2d Cir. 2013). This burden is "very heavy" in light of "the courts' well-established deference to the Government's choice of investigatory methods." United States v. Rahman, 189 F.3d 88, 131 (2d Cir. 1999) (citations omitted); cf. United States v. Ming He, 94 F.3d 782, 792 (2d Cir. 1996) (citing United States v. Lau Tung Lam, 714 F.2d 209, 210 (2d Cir. 1983) for the proposition that "supervisory power over DEA conduct in a sting operation is 'extremely limited'"). Government misconduct is "an issue frequently raised that seldom succeeds." United States v. Schmidt, 105 F.3d 82, 91 (2d Cir.

4

1997) (citation omitted); <u>see also</u> <u>United States v. LaPorta</u>, 46 F.3d 152, 160 (2d Cir. 1994) (similar).

To prevail on a claim of outrageous government conduct, a defendant must demonstrate that the conduct was "so outrageous that common notions of fairness and decency would be offended were judicial processes invoked to obtain a conviction." <u>United States v. Bout</u>, 731 F.3d 233, 238 (2d Cir. 2013) (quoting <u>Schmidt</u>, 105 F.3d at 91) (internal quotation marks omitted).  In other words, the Government's conduct must "shock the conscience." <u>Cromitie</u>, 727 F.3d at 218 (citing <u>Rahman</u>, 189 F.3d at 131).  "Generally, to be 'outrageous,' the government's involvement in a crime must involve either coercion or a violation of the defendant's person." <u>Al Kassar</u>, 660 F.3d at 121 (citations omitted); <u>accord</u> <u>United States v. Kelly</u>, 707 F.2d 1460, 1476 (D.C. Cir. 1983) (explaining that due process limits are violated only where government misconduct includes "coercion, violence or brutality to the person" (citing <u>Irvine v. California</u>, 347 U.S. 128, 132-33 (1954)) (internal quotation marks omitted)).

By contrast, "[i]t does not suffice to show that the government created the opportunity for the offense, even if the government's ploy is elaborate and the engagement with the defendant is extensive." <u>Al Kassar</u>, 660 F.3d at 121 (citations omitted); <u>see also</u> <u>Cromitie</u>, 727 F.3d at 219 ("[A]s with all sting operations, government creation of the opportunity to commit an offense, even to the point of supplying defendants with materials essential to commit crimes, does not exceed due process limits." (citations omitted)); <u>United States v. Myers</u>, 692 F.2d 823, 837

(2d Cir. 1982) ("[T]he creation of an opportunity for the commission of crime by those willing to do so" does not violate due process.).  The extent to which the Government induced the defendant to commit the crime is likewise irrelevant to a claim of outrageous government conduct.  See United States v. Chin, 934 F.2d 393, 398 (2d Cir. 1991) ("[W]hether investigative conduct violates a defendant's right to due process cannot depend on the degree to which the governmental action was responsible for inducing the defendant to break the law."); Myers, 692 F.2d at 843 ("Due process challenges to an undercover agent's encouragement have been rejected when one defendant was solicited twenty times before committing an offense and when another defendant was tempted by a million-dollar cash deal and prodded by veiled threats." (citations omitted)).

III.   DISCUSSION

In moving to dismiss the Superseding Indictment based on outrageous government conduct, Borrero does not allege any coercion or violation of his person. See Al Kassar, 660 F.3d at 221.  He does not allege any violence or brutality.  See Irvine, 347 U.S. at 133.  Rather, Borrero argues that the Government's conduct was outrageous based on the following:

1.    Borrero "had never been convicted of a crime like the instant fictitious robbery";

2.    "[T]he government had no suspicion of [Borrero] before the reverse sting operation";

3.    "[T]he government made up a crime that enticed all of the defendants to get involved";

4.    "[T]he government was deeply involved in the offense"; and

6

5.      "The[re] was no necessity for the government to take action because, but for the government, no crime existed."

(Def.'s Mem. at 2.)  These assertions are insufficient to meet the "very heavy" burden of showing that the Government engaged in outrageous conduct in this case. See Rahman, 189 F.3d at 131; see also Bout, 731 F.3d at 239 (explaining that something akin to coercion or violation of the person is "necessary, at a minimum, to prevail on an outrageous government conduct charge").

Borrero's first two assertions—that he "had never been convicted of a crime like the instant fictitious robbery" and that the Government was not suspicious of Borrero before the reverse sting operation (Def.'s Mem. at 2)—are irrelevant to a claim of outrageous government conduct.  The Government's suspicion of the Crew was itself and alone sufficient to trigger the investigation; there is no requirement that the Government ascertain the identity of every member of an organization before investigating it using a sting operation.  The fact that Borrero had not been previously convicted of a Hobbs Act robbery is likewise irrelevant.

The next two alleged bases for Borrero's claim—that "the government made up a crime that enticed all of the defendants to get involved" and that "[t]he government was deeply involved in the offense" (Def.'s Mem. at 2)—at most establish that the Government "created the opportunity" for Borrero and other members of the Crew to commit offenses.[3]  The law is clear that such conduct does

---

[3] Borrero's fifth ground—that there was no necessity for the Government to take action (Def.'s Mem. at 2)—is both irrelevant and incorrect.  The Government had information that the Crew had committed robberies in the past, and it had a duty to investigate that information. See Cromitie, 727 F.3d at 219 ("[T]he FBI agents would have been derelict in their duties if they did not test how far

7

not amount to a due process violation. See Al Kassar, 660 F.3d at 221 ("It does not

suffice to show that the government created the opportunity for the offense, even if

the government's ploy is elaborate and the engagement with the defendant is

extensive."); Cromitie, 727 F.3d at 219 ("[A]s with all sting operations, government

creation of the opportunity to commit an offense, even to the point of supplying

defendants with materials essential to commit crimes, does not exceed due process

limits." (citations omitted)); Chin, 934 F.2d at 398 ("[W]hether investigative conduct

violates a defendant's right to due process cannot depend on the degree to which the

governmental action was responsible for inducing the defendant to break the law.").

Absent conscience-shocking conduct such as coercion, intimidation, or physical

force, sting operations do not violate due process. The Court effectively held as

much in Al Kassar:

> The defendants allege no coercion, intimidation, or physical force by the DEA
> agents. Instead, they argue that the following facts amount to outrageous
> government conduct: (1) no conspiracy existed among the defendants prior to
> the government's request for weapons, (2) the government "lured" the
> defendants into the illegal arms deal by first offering an arms deal that was
> legal, and by befriending al Ghazi and winning his trust over a long period,
> (3) al Ghazi exhibited some hesitation and apprehension about the illegal
> weapons deal, (4) the government involved the defendants in a wide variety
> of illegal activities, and (5) the government induced the crimes using political
> rhetoric and money. None of these actions, either separately or in
> combination, rises to the legal standard of outrageous. . . . While the sting
> operation in this case was elaborate and prolonged, there was no coercion or
> physical force, and nothing done was outrageous or a shock to the conscience.

Al Kassar, 660 F.3d at 121-22.

---

[the defendant] would go to carry out his desires" "to do something in America" and to die like a
martyr.).

Borrero cites only one case in support of his motion to dismiss the Superseding Indictment—a decision from the Central District of California, <u>United States v. Hudson</u>, 3 F. Supp. 3d 772 (C.D. Cal. 2014).  To start, this decision is not binding on this Court and applies a totality-of-the-circumstances standard that has never been adopted in this Circuit.  Defendant acknowledges this.  (<u>See</u> Def.'s Mot. at 2 ("[T]he Second Circuit has not yet adopted the analysis and reasoning in <u>Hudson</u>.").)  In any event, the sting operation in this case was not "outrageous" even under <u>Hudson</u>'s analysis.  Indeed, the court in <u>Hudson</u> acknowledged that sting operations are "undoubtedly a valid law-enforcement tool when employed to target or prevent demonstrated criminal enterprises."  <u>Hudson</u>, 3 F. Supp. 3d at 775.  The Crew was an ongoing criminal enterprise, and the Government's actions were entirely appropriate.

IV.    CONCLUSION

For all of the reasons set forth above, Borrero's motion to dismiss the Superseding Indictment for outrageous government conduct is DENIED.

SO ORDERED.

Dated:        New York, New York
              October 27, 2014

_____
KATHERINE B. FORREST
United States District Judge